**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Randi Jo McKnight,<br>Plaintiff,<br>v.<br>Carolyn W. Colvin,<br>Defendant. | No. CV-15-00440-PHX-JZB<br>**ORDER** |

Plaintiff Randi Jo McKnight seeks review of the Social Security Administration Commissioner's decision denying her application for disability benefits under Title II of the Social Security Act. (Doc. 1; Doc. 25.) For the reasons below, the Court will vacate the Commissioner's decision and remand this matter for further administrative proceedings.[1]

## I. Background

On February 1, 2013, Plaintiff filed a Title II application for disability insurance benefits. (AR at 21.)[2] On June 19, 2013, Plaintiff's application was denied. (*Id.*) On October 1, 2013, Plaintiff's application was denied upon reconsideration. (*Id.*) On June 30, 2014, a hearing was held before Administrative Law Judge (ALJ) Patricia A. Bucci.

---

[1] This matter is suitable for resolution based on the briefs. Accordingly, the Court denies Plaintiff's request for oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Citations to "AR" are to the administrative record. In her application, Plaintiff alleged an onset date of November 4, 2009. However, Plaintiff subsequently amended the alleged onset date to July 1, 2012. (*Id.* at 21.)

(*Id.*) On August 7, 2014, the ALJ ruled Plaintiff is not entitled to disability benefits because she is "not disabled under sections 216(i) and 223(d) of the Social Security Act." (*Id.* at 30.) On January 14, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1–6.) Plaintiff thus exhausted the administrative review process.

On March 11, 2015, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On August 18, 2015, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits or, in the alternative, for further proceedings. (Doc. 25 at 26–28.) On September 17, 2015, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 26.) On December 14, 2015, Plaintiff filed a Reply Brief. (Doc. 31.)

## II. Legal Standards

### a. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing evidence that both supports and detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and

determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**b. The ALJ's Five-Step Evaluation Process**

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the

> second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" ["RFC"] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (AR at 21–30.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date. (*Id.* at 23.) At step two, the ALJ found that Plaintiff has the following severe impairments: "status post total right knee replacement with subsequent revision, status post comminuted periprosthetic right femur fracture with subsequent hardware removal, and degenerative disc disease of the lumbar spine." (*Id.*) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 25.)

At step four, the ALJ found the following:

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) subject to the following. She can occasionally operate foot controls with the right lower extremity; she can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, or crawl; she is limited to jobs that can be performed using a handheld assistive device for standing, prolonged ambulation, or ambulating across uneven surfaces; and she should avoid even moderate exposure to unprotected heights that are high or exposed, and dangerous machinery with moving

mechanical parts, except motor vehicles.

(*Id.* at 25–26.) The ALJ further found that Plaintiff "is capable of performing past relevant work as a medical coder/biller. This work does not require the performance of work-related activities precluded" by Plaintiff's RFC. (*Id.* at 29.) Given that finding, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 4, 2009, through the date" of the ALJ's decision. (*Id.* at 30.)

## III. Analysis

Plaintiff argues that the ALJ's decision is defective for the following reasons: (1) the ALJ improperly weighed medical source evidence; and (2) the ALJ improperly rejected Plaintiff's symptom testimony. (Doc. 25 at 17–26.) The Court addresses Plaintiff's arguments below.

### a. Weighing of Medical Source Evidence

Plaintiff alleges the ALJ erred in rejecting the opinions of Dr. Kelly, Plaintiff's treating physician. (*Id.* at 17–23.) Below, the Court addresses the ALJ's treatment of Dr. Kelly's opinions.

#### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040–41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r*

*of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421–22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original) (citations omitted). However, a non-treating or non-examining physician's opinions may serve as substantial evidence "when the opinions are consistent with independent clinical findings or other evidence of record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

**ii. The ALJ erred in rejecting Dr. Kelly's opinions.**

Plaintiff argues the ALJ erred by giving Dr. Kelly's opinions "[l]ittle weight." (AR at 29; Doc. 25 at 17–18.) Plaintiff sought treatment from Dr. Kelly from 2012 to 2014. (AR at 356–410, 417–31, 438–43, 455–59, 463–82.) On June 3, 2014, Dr. Kelly completed a "Pain Functional Capacity (RFC) Questionnaire" and a "Medical Assessment of Ability to Do Work Related Physical Activities." (*Id.* at 455–56, 457–59.) On these two forms, Dr. Kelly opined that: (1) Plaintiff suffers from "moderately severe" pain that "constantly" interferes with her "concentration, . . . persistence[,] or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)"; and (2) Plaintiff is limited to sitting for less than six hours ("can't sit for twenty to thirty minutes") and standing for less than two hours in a normal workday. (*Id.*)

Dr. Kelly's opinions were contradicted by the opinions of an agency, non-examining physician, Dr. Ernest Griffith. (*Id.* at 87–108.) The ALJ could, therefore, discount Dr. Kelly's opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830–31.

The Court finds the ALJ failed to meet this standard. The ALJ assigned "little weight" to Dr. Kelly's opinions because (1) "there is no medically objective measure of pain, and the limitations described must necessarily be based on the claimant's subjective complaints," (2) "his opinion that [Plaintiff] could sit no more than 20-30 minutes and stand less than 2-hours in a normal workday is unsupported by the longitudinal objective findings, including those of Dr. Kelly", and (3) "[t]he restrictions described by Dr. Kelly are . . . so restrictive, that [Plaintiff] would be virtually bedridden if they were to be accepted." (AR at 29.)

First, an ALJ may reject a physician's opinion based on a claimant's subjective complaints if the claimant's credibility is discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, however, as detailed below, the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility. (AR at 26–28.)

Further, the ALJ failed to discuss with specificity Dr. Kelly's treating records related to Plaintiff's pain. Some of Dr. Kelly's treatment notes reflect findings that could support his opinions regarding Plaintiff's limitations. (*See, e.g.*, AR. at 404, 422, 428, 429, 440, 472, 479). For example, in June 2014, roughly ten months after Dr. Griffith's assessment, Dr. Kelly's treatment notes state the following: Plaintiff "[s]till has pain unchanged over the last 3-6 months"; "[p]eriprosthetic pain noted with also right hip and back discomfort"; "[it] has affected her overall mental and emotional quality of life"; Plaintiff's complaint regarding hip pain "is moderate and severe"; and "[e]pisodes occur constant." (*Id.* at 470.) The ALJ omitted discussion of these detailed findings from June 2014 in her discussion of the medical evidence. (*Id.* at 27–29.) The Court acknowledges that review of Dr. Kelly's Medical Assessment form shows the section requesting Dr. Kelly to "[p]lease describe the findings that support the above limitations" is blank. (*Id.* at 459.) However, Dr. Kelly's unexplained check-box form is entitled to weight if it comports with extensive treating experience and numerous records. *Garrison*, 759 F.3d at 1013 (9th Cir. 2014) (affirming that opinions expressed in check-box form that are

"based on significant experience . . . and supported by numerous records . . . [are] entitled to weight that an otherwise unsupported and unexplained check-box form would not merit.").

Second, the ALJ found Dr. Kelly's opinion that Plaintiff "could sit no more than 20-30 minutes and stand less than 2-hours in a normal workday" to be "unsupported by the longitudinal objective findings." (AR at 29.) An ALJ may discount a treating physician's opinion that is unsupported by objective findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings."). Here, however, the objective findings cited by the ALJ are inconsistent, and more importantly, the ALJ failed to explain why her interpretation of the medical record evidence is correct, and Dr. Kelly's is not. *Embrey*, 849 F.2d at 421–22.

The ALJ cited the following findings and evidence: (1) Plaintiff's knee impairments precede the amended alleged onset date by a number of years; (2) since the right knee arthroplasty revision in April 2012, there does not appear to be any subsequent instability of the Plaintiff's knee; (3) the only EMG testing "found no evidence of major nerve entrapment around the knee, or lumbosacral radiculopathy"; (4) subsequent primary care records report "no swelling or dislocation of the right lower extremity, with full passive range of motion of the right knee and hip"; (5) in August 2012, Plaintiff suffered a comminuted periprosthetic fracture of the distal femur and underwent an open reduction and internal fixation procedure (ORIF); (6) Plaintiff's femur facture and ORIF procedure "appears to have limited [Plaintiff's] exertional abilities to stand and walk more than the prior knee injuries and impairments"; (7) although diagnostic imaging showed good healing of the femur fracture, Plaintiff subsequently requires "a cane for ambulation and experiences symptomatic pain with weight bearing, lifting heavy objects, standing, or walking for prolonged periods"; (8) physical examination records from June 2014 show Plaintiff has evidence of right quadriceps atrophy; (9) Plaintiff has "5/5

strength distally in the right foot"; and (10) Plaintiff's treating orthopedist generally described Plaintiff "as being in no acute distress." (AR at 27.) However, the ALJ failed to discuss how these findings contradict or undercut Dr. Kelly's specific finding regarding the amount of time Plaintiff can sit. Therefore, the ALJ failed to support this reason with substantial evidence.

The ALJ also cited to Dr. Griffith's findings in support of the ALJ's determination. (*Id.* at 28.) On September 10, 2013, Dr. Griffith, a state Disability Determination Services medical consultant, completed a physical RFC assessment of Plaintiff. (*Id.* at 87–108.) Dr. Griffith assigned a "Durational SED RFC." (*Id.* at 102.) The ALJ noted Dr. Griffith opined that Plaintiff could sit "up to 6-hours" and stand "up to 3-hours in a normal workday." (*Id.* at 28.) However, the ALJ did not cite to specific objective findings supporting Dr. Griffith's opinions, instead merely stating that Dr. Griffith's "assessments are generally consistent with the evidence of record." (*Id.*) Notably, Dr. Griffith's medical assessment was not based on treating experience or a personal examination of Plaintiff, but rather on a partial review of the record. (*Id.*)

Finally, the ALJ rejected Dr. Kelly's opinions because "they are . . . so restrictive, that [Plaintiff] would be virtually bedridden if they were to be accepted." (*Id.* at 29.) The Court does not find this reason specific and legitimate or supported by substantial evidence. The ALJ does not explain why the limitations opined by Dr. Kelly should not be given controlling weight, just because they are significant.

In sum, the Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Kelly's opinions. *Garrison*, 759 F.3d at 1012. In particular, the ALJ did not specify how the longitudinal objective findings conflict with Dr. Kelly's assessment of Plaintiff's functional limitations, or explain why her interpretation of the medical record evidence is correct, while Dr. Kelly's is not. *Embrey*, 849 F.2d at 421–22. For the foregoing reasons, the Court finds that the ALJ erred by rejecting Dr. Kelly's opinions.

**b. Plaintiff's Symptom Testimony**

Plaintiff also argues the ALJ committed harmful legal error by rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons supported by substantial evidence. (Doc. 25 at 23–26.) The Court agrees.

**i. Legal Standard**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014–15 (citing *Lingenfelter*, 504 F.3d at 1035–36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160–61 (9th Cir. 2008) ("[R]equiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637–39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284 (citation omitted).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

**ii. The ALJ erred in rejecting Plaintiff's symptom testimony.**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR at 26.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (*Id.*) The ALJ did not make an affirmative finding of malingering. Therefore, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony regarding the severity of her symptoms.

The ALJ found Plaintiff's "testimony to be not wholly credible" because (1)

"Plaintiff left her last employment because she was laid off," (2) Plaintiff's "testimony that she needs to nap 4-5 hours per day also does not appear to be supported by the longitudinal medical evidence, is not medically necessary, and is entirely subjective," (3) Plaintiff's "spinal impairment and symptoms have been treated conservatively with oral medications, as well as epidural injections," (4) Dr. Brian Briggs' examination "is probative in showing that [Plaintiff's] knee impairment was substantially less significant in limiting [Plaintiff's] ability to stand or walk than she had alleged during the hearing," and (5) the medical evidence generally does not show that her impairments have been totally work preclusive. (*Id.* at 27-28).

The Court finds the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. First, the fact that Plaintiff was laid off from her last job does not undercut her credibility regarding her symptoms occurring after that time. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Second, the ALJ inaccurately states Plaintiff's testimony, which did not indicate she was napping for four to five hours per day. (*Id.* at 27, 51–52.) Rather, Plaintiff testified that her doctor instructed her to lie on her couch with a pillow underneath her knee and ankle to elevate them, and she does this intermittently for four and half to five hours a day. (*Id.* at 43, 51-52.)[3] More importantly, the ALJ fails to sufficiently specify what evidence undermines Plaintiff's testimony. (*Id.* at 27–29.) Although the ALJ provides a discussion of the medical evidence (outlined above), she failed to explain, by linking specific evidence to Plaintiff's testimony, why she discounted Plaintiff's credibility. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("The ALJ's decision then drifts into a discussion of the medical evidence; it provides no *reasons* for the credibility determination." (emphasis in original)).

Third, an ALJ may infer that a claimant's "response to conservative treatment undermines [a claimant's] reports regarding the disabling nature of his pain."

---

[3] Notably, Defendant's Brief does not attempt to support the ALJ's treatment of this testimony. (*See* Doc. 26.)

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). However, the Ninth Circuit has indicated that at least some of the treatment Plaintiff received for her physical impairments (injections) may not be conservative. *See Garrison*, 759 F.3d at 1015 ("we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment").

Fourth, the ALJ opined that Dr. Briggs's medical examination report "is probative in showing that [Plaintiff's] knee impairment was substantially less significant in limiting [Plaintiff's] ability to stand or walk, than [Plaintiff] had alleged during the hearing." (*Id.* at 28.) The Court rejects discounting Plaintiff's credibility on this basis for three reasons: (1) Dr. Briggs's medical examination is not in the administrative record; (2) Plaintiff's alleged onset date is after Dr. Briggs's medical examination; and (3) the ALJ did not discuss Dr. Briggs's findings with specificity. (*Id.* at 28; Doc. 25 at 4, n. 6.).

Finally, the ALJ's general assertion that she discredited Plaintiff's testimony because the alleged extent of her impairments are shown by the medical evidence is insufficient. Although the lack of supporting medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects). Here, the ALJ cited to some medical evidence regarding Plaintiff's impairments. However, as discussed above, the ALJ failed to specify how that medical evidence specifically undercuts Plaintiff's credibility.

In sum, the Court finds the ALJ's general assertions that Plaintiff's testimony is not credible are insufficient. *Astrue*, 481 F.3d at 750 ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting *Lester*, 81 F.3d at 834). The ALJ did not explain how Plaintiff's

testimony is not credible. *Id.* Accordingly, the Court finds the ALJ erred by failing to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

**IV. Remand for further proceedings is appropriate here.**

Having determined that the ALJ erred, the Court must vacate the Commissioner's decision. The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. Such a determination is within the Court's discretion. *Smolen*, 80 F.3d at 1292.

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted); *see also Treichler*, 775 F.3d at 1101 (noting that a remand for further administrative proceedings is generally useful where the record has not been fully developed, there are outstanding conflicts and ambiguities to be resolved, or the presentation of further evidence may "prove enlightening."). The Court applies the credit-as-true rule to determine that a claimant is disabled and entitled to an award of benefits only if there are no "outstanding issues [in the record] that must be resolved" and "it is clear from the record that the ALJ would be required to find the claimant disabled were [the improperly rejected] evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). However, a "claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r, Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The Court has considered the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. The Court finds that the record contains evidentiary conflicts discussed above that require further evaluation by the ALJ. The Court will therefore remand this case for further proceedings and a new decision. On remand, in addition to reevaluating the evidence and taking new testimony,

the ALJ should accept any additional medical evidence into the record that exists for the period at issue.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is vacated and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 30th day of March, 2016.

Honorable John Z. Boyle
United States Magistrate Judge